[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISIONRE: PLAINTIFF'S MOTION TO MODIFY CODED NO. 170 AND,DEFENDANT'S MOTION TO MODIFY CODED NO. 172
The plaintiff has filed a motion to modify the existing alimony and support order, and the defendant has filed a motion to modify the existing alimony and support order.
Many of the facts that give rise to these two motions are not in dispute. The marriage of the parties was dissolved by court judgment after trial on May 31, 1985. The parties were married on September 6, 1969. As of the date of dissolution, the parties had five minor children: Philip Palazzo born August 2, 1970; Nicholas Palazzo born January 17, 1972; Mia Palazzo born April 26, 1973; Nina Palazzo born April 14, 1978; and Michael Palazzo born March 6, 1983. An order of joint legal custody of the five children was entered, with the two oldest children to reside with the defendant and the three youngest children to reside with the plaintiff. The defendant was ordered to pay to the plaintiff alimony in the sum of $2000 per month until the death of either party, the remarriage of the plaintiff, cohabitation with an unrelated adult male as prescribed by Connecticut General Statutes § 46b-86 (b), or December 31, 2001, whichever event occurs first. The order was not to be reduced by virtue of any employment, by which the plaintiff earns $16,000 per annum. The defendant was ordered to make the plaintiff a beneficiary of $250,000 of the $500,000 term life insurance policy he had until such time as his alimony obligation terminated. Of the approximate $180,000 being held in escrow from the sale of the family home, $100,000 was awarded to the plaintiff and the balance to the defendant. The defendant was ordered to pay to the plaintiff support in the amount of $550 per month per child for the support of the three minor children residing with her Child support was to end on the death of a minor child, attaining legal maturity, or emancipation by marriage, or other legally CT Page 2955 recognized means. No support was ordered to be paid by the plaintiff to the defendant. The remaining $250,000 from the defendant's $500,000 life insurance was to be used for listing as equal beneficiaries all five children. He was to do so as long as his obligation to support continues. Each party was awarded their separate bank accounts and the personalty from the prior family home presently in their separate possession and control. The plaintiff had miscellaneous household furniture and jewelry at the time of the divorce with a value of $10,000, and two bank accounts; one of which had $822.50 in it and the second had $8782. She also had liabilities totaling $17,817.06. The trial court found that the liabilities shown on the defendant's financial affidavit to his father in the amount of $18,800, to Leonard Amato (Landlord) in the amount of $6000, and a loan from Eastern Landscaping in the amount of $25,278 did not exist. The remaining liabilities that he had consisted of a loan from Connecticut Bank and Trust Company, a joint loan with the plaintiff from Scarsdale National Bank with a balance due of between $1482 and $2000, a Sears Roebuck liability of $800, a MasterCard liability of $1100, a liability to Dr. Ehrlich with a balance of $1700, and a VISA liability of $1170. Each party was ordered to pay the liabilities shown on their respective financial affidavits and hold the other party harmless. The defendant's financial affidavit dated April 3, 1985, showed gross weekly salary of $730 and net weekly income from employment of $568.22. The trial court further found that the defendant, in 1982 and 1983, was earning not less than $90,000 a year, and possibly more. The plaintiff was not employed at the time of the divorce.
Alimony and/or support modification is governed by § 46b-86 that provides in part that a "final order for the periodic payment of permanent alimony or support . . . may . . . be . . . modified . . . upon a showing of a substantial change in the circumstances of either party or upon a showing that the final order for child support substantially deviates from the child support guidelines. . . ." In this case, both the plaintiff's motion to modify alimony and support coded No. 170, and the defendant's motion to modify alimony and support coded No. 172 are based solely on the grounds of a substantial change in financial circumstances of the parties. Therefore, the threshold issue on the motion to modify alimony and the threshold issue on the motion to modify support is whether there has been a substantial change in the financial circumstances of either party. CT Page 2956
The court finds the following additional facts. The defendant was the sole stockholder of both the New York corporation and the Connecticut corporation. At the time of the divorce, the plaintiff had total weekly expenses of $918.54. At the time of divorce, the defendant had a checking account with a balance of approximately $1170, a money market account with a balance of $3000, and $50 in another checking account. Those assets were all awarded to the defendant. He had weekly expenses at the time of the divorce, not including the $250 he was paying to the plaintiff, of $402.85.
The plaintiff is currently employed by William Raveis Real Estate as a secretary. She commenced working there in April of 1996. Her regular gross weekly income is $517.20 and her regular net weekly income is $410.08. In addition to her regular gross weekly pay of $517, the plaintiff also receives a salary incentive pay. The total amount of that pay from January 1, 1997 to March 21, 1997, was $67.50. That amounts to an average of approximately $6 per week. In addition, she has K1 income arising out of a one-seventh interest that she has in a corporation with an annual income of $568, and an average of approximately $11 weekly income. Her total gross weekly income is, therefore, approximately $534, and her total net weekly income is approximately $426. At the time of divorce, she had a lawsuit pending which was settled after the divorce in either 1985 or 1986, for a total of $33,000. She received a net of $20,000 that was used to reduce her mortgage. She owns a home at 14 Vincent Drive, Simsbury, Connecticut. The fair market value of the home is $200,000. The mortgage balance is $50,600. The equity is $149,400. The mortgage is held by the JFM Corporation, in which she holds a one-seventh interest. The purchase price of the home was $140,000. She used $65,000 or $75,000 of the $100,000 that she received from the divorce judgment toward purchasing the home, and obtained a mortgage from JFM Associates for the balance of the purchase price. She owns a 1996 Ford with a fair market value of $8000. The vehicle was purchased for her to use with her children by her father. She also operates a leased 1996 Mazda. She has two IRAs, one with a value of $1,448.06 and the second with a value of $1300. One of her liabilities is to the Bank of Boston for a home equity loan obtained in 1994, of $40,000 that has a balance due of $28,383.06, and a monthly payment of $439.49. That loan was taken out to consolidate other debts that she had. Since 1991, she has obtained the following amounts annually from her father, Frank McDermott: CT Page 2957
__________________________________________________________________________ |1991 |1992 | 1993 | 1994 | 1995 | 1996 |1997 | |___________|___________|___________|___________|__________|________|______| |$19,820.50 |$20,305.75 |$20,200.14 |$20,242.13 |$5,966.68 |$19,828 |$1342 | |___________|___________|___________|___________|__________|________|______|
Between 1985 and 1991, the plaintiff's father did not provide any funds for her.
The issue before the court is whether those are loans from her father or whether those are gifts from her father. Approximately $42,000 of the $107,705 amount that the plaintiff claims she owes her father was for college expenses for the adult children. From the evidence presented, the court finds that approximately $42,000 of the funds provided to the plaintiff from her father was in the nature of a gift and the balance was in the nature of a loan.
She has a liability to Dr. Roy Ehrlich with a balance due of $7672 for psychiatric treatment for her minor son, Michael Palazzo. She has a liability to Sears with a balance due of $825 and a $20 monthly payment, and a liability to Valley Home and Garden with a balance due of $761.66 and a $100 monthly payment.
She shows total basic housing monthly expenses of $1,559.23. Included in that amount is a monthly mortgage payment of $335.50. She is not making the payments on that mortgage. She has monthly medical and dental expenses of $50. Those expenses are for her and her children, Michael and Nina. About one-third of that is for her adult child Nina Palazzo. She has a $200 monthly clothing expense for herself. She has a $600 monthly clothing expense, of which approximately $300 is for Michael, and the other $300 is for the adult daughter Mia.
The plaintiff's financial affidavit dated April 2, 1997 shows a monthly real estate expense of $331.20. The plaintiff does not pay that liability. She shows a monthly food expense of $1,082.50. That expense is for her, as well the other children who live with her. She has interior and exterior maintenance expenses for her home totaling $175 per month. She has a $28.75 monthly membership fee for belonging to Winding Trails, which is for recreation purposes. Most of the use of that membership is by two of her adult children. She has a total monthly transportation bill of $615.94. Much of that expense is incurred as a result of CT Page 2958 adult children operating one of the two motor vehicles. Approximately $170 of that amount is for herself. She has children's expenses totaling $206.45 that is for the minor child, Michael, and the adult child, Nina. Approximately $109 per month is an expense for the minor child. She has holiday expenses totaling $108 per month. Most of that is for Christmas gifts for Nina and Michael. She has a Capital One VISA liability with a balance of $6,076.92 and a monthly payment of $183. That credit card was taken out in 1996, when she transferred the balance due on a different credit card to the Capital One VISA card. She owes the Bank of Boston VISA credit card $1,513.71 with a monthly payment of $50. Some of the charges were for the minor child, and other charges were for two of her adult children. Her Prudential IRA accounts were a gift from her father. The plaintiff has a weekly food bill of $250, approximately $150 of which is for herself and the minor child, Michael.
The defendant is fifty years old and in good health. He remarried in September of 1987, and has two children from that marriage, ages nine and four. He has been a landscape contractor since 1974. His business presently has nine full-time employees, including the defendant, the defendant's wife, the defendant's brother, and his brother's wife. Through the end of 1997, the defendant was drawing gross weekly wages from his business of $2600 and his present wife was drawing gross weekly wages of $600. Since that time, the defendant has a reduced gross weekly wage of $2297, while his wife continues to draw a gross weekly wage of $600. His business owns a 1996 Toyota that he operates, as well as a 1991 Volvo that his present wife operates. His business pays all of his transportation expenses. The business provides a similar benefit to the defendant's brother and to his brother's wife. The business also pays for all motor vehicle insurance expenses. It also provides for $750,000 life insurance policy for the defendant, and pays the premium and provides for a $250,000 life insurance policy for the defendant's brother, and pays the premium. Both the defendant's wife and his brother's wife are the beneficiary of each policy that exists. The defendant's financial affidavit does not show on it the $750,000 life insurance policy that he has through his business. At the present time, the defendant owns 75 percent of his landscaping business and his brother owns 25 percent. The defendant's financial affidavit dated April 2, 1997, shows a liability to Fleet Bank in the amount of $30,000 and a weekly payment of $58. The defendant does not pay that liability. The actual balance is approximately $24,000 and his business makes the payment on that liability. His business owes him $35,000 for loans made to it in 1993 that is not shown on his financial affidavit. His financial affidavit shows weekly food expense of $175 and CT Page 2959 weekly clothing expenses of $130. Those are the expenses for himself, his wife and his two children from his present marriage. The defendant reduced his weekly draw from the business from approximately $2600 to $2297 as a result of some business setbacks. The defendant's net weekly income is $1,753.02. The gross annual income for the business for the fiscal year July 1, 1995 to June 30, 1996, was $1,572,343. The gross annual income for the business for the fiscal year July 1, 1996 to June 30, 1997, was $1,254,792. The defendant presently resides in Southport at a home that is in his present wife's name only. The fair market value of that property is $475,000 to $500,000. It has a mortgage balance in the range of $288,000 to $290,000. The home was built on land that the defendant acquired in 1991, for $190,000. In transferring title to his present wife of the Southport home, the defendant has voluntarily reduced his assets.
The plaintiff's motion to modify coded No. 170 was served on the defendant on December 10, 1995, by in-hand service by a deputy sheriff.
The minor child, Nina Palazzo, who was born on April 14, 1978, was a senior in high school as of April, 1997. She turned eighteen years old on April 14, 1996. She still resides with the plaintiff. She will not graduate high school due to severe learning disabilities. The support order for the minor child, Nina Palazzo, ended when she attained "legal maturity," or "other legally recognized means." The statutory amendment to § 46b-84 (b) requiring support to continue until the child completes twelfth grade or attains the age of nineteen, whichever first occurs, only applies to those cases where the decree of dissolution of marriage was entered on or after July 1, 1994. Therefore, that provision does not apply to this case, and the obligation to support ended when the child turned eighteen. There is one remaining child who is a minor who continues to reside with the plaintiff, Michael Palazzo, born March 6, 1983. Michael Palazzo is in eighth grade and is learning disabled.
 I THE ISSUE OF ALIMONY MODIFICATION
The court finds that the plaintiff's net weekly income from the date of dissolution to the present time has been increased from $0 to $426 The court further finds that the defendant's net weekly income from the date of dissolution to the present time has been increased from approximately $1265 to $1,753.02. The CT Page 2960 court finds that as a result of each of those increases in net weekly income that there has been a substantial change in circumstances since the date of divorce. The court further finds that it was not contemplated at the time of divorce that the plaintiff's income would exceed $16,000 annually, or that the defendant's income would exceed $90,000 annually. Alimony ordersmay be modified upon a showing of a substantial change in circumstances of either party. Noce v. Noce,181 Conn. 145, 149 (1980). In general, the same sorts of circumstances are relevant in deciding whether a decree may be modified as are relevant in making the initial order. This court has, therefore, considered the provisions of § 46b-82
regarding the issue of modifying alimony and denies the request of each party to modify alimony.
 II THE ISSUE OF SUPPORT MODIFICATION AND RETROACTIVITY
This court has already found that there has been a substantial change in circumstances of each party since the date of divorce. The issue then is whether the present order of $550 per month for support is in accordance with the support guidelines. The plaintiff's net weekly income of $426 plus the defendant's net weekly income of $1,753.02 totals $2,179.02. The guidelines show the amount of support to be paid with a combined net income of the parties does not exceed $1750. Above $1750, the court remains free to fashion appropriate child support awards on a case by case basis, provided the amount of support prescribed at the $1750 level is presumed to be the minimum that should be ordered in such cases.
In determining whether to modify child support, this court has reviewed the guidelines, in addition to, and not in lieu of the various other statutory criteria of § 46b-84b. This court finds that it is not appropriate to deviate from the guidelines as a result of the defendant having two minor children from his present marriage. This court further finds that there are no grounds to deviate from the guidelines based on the fact that the plaintiff' father has provided funds to her, some of which have been in the nature of a gift and some of which have been in the nature of a loan. None of that money provided to the plaintiff qualifies for the deviation criteria of § 46b-215a-3 (b)(1). The defendant further seeks to have the court deviate from the guidelines under the provisions of § 46b-215a-3 (b)(6)D). CT Page 2961 That section provides that if on a motion for modification "the trier of fact finds that the obligor is working more than forty hours per week and has substantially increased the number of hours worked per week, by comparison with his or her work history at the time the order entered, the trier of fact may order the child support from the increased income in an amount less than that which would have otherwise been required by the guidelines." In this case, there has been no credible evidence presented that the number of hours presently worked by the defendant has substantially increased from the number of hours worked per week at the time of dissolution. In this case, the court orders that support be increased from $550 per month to $325 per week. This order is effective as of today's date and is not made retroactive.
The court further orders that the parties exchange copies of their federal and state income tax returns, and for the defendant to also provide to the plaintiff a copy of all corporate tax returns in which either he or his present wife has gross annual income of at least $25,000, and that those returns be provided to the plaintiff for so long as there is an outstanding alimony order or outstanding support order or any arrearage arising out of such order. Such returns are to be provided by registered mail, return receipt or certified mail, return receipt within thirty days after the date the returns have been filed.
Axelrod, J.